## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Christine M. Arguello

Civil Action No.   10-cv-02544-CMA-MEH

LEANNA COX,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

This matter is before the Court on Defendant's Motion for Judgment on the Administrative Record (Doc. # 35).  For the following reasons, Defendant's Motion is granted.

### I. BACKGROUND

**A.   FACTS**

This action arises from a dispute as to whether Defendant, The Lincoln National Life Insurance Company, failed to pay the appropriate amount of insurance benefits to Plaintiff, Leanna Cox, on a life insurance plan purchased by her deceased husband, Pete W. Cox ("Mr. Cox"), for which she was a named beneficiary.  Mr. Cox was insured under a Group Life Insurance Policy ("Policy") that Defendant had provided to Mr. Cox's employer, Axis Commercial Realty, Inc. ("Axis").  (Doc. # 33 at 112, *et seq.*)  The Policy

provided that Defendant "has the authority to: (1) manage this Policy and administer claims under it; and (2) interpret the provisions and resolve questions under this Policy." (*Id.* at 203.)

The Policy's "Schedule of Insurance" benefits for full-time employees, which included Mr. Cox, specifies that the amount of personal life insurance coverage equals "[o]ne and one-half times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000." (*Id.* at 114-15.) The Policy further enumerates:

> **Basic Annual Earnings** means the Insured Person's annual base salary or annualized hourly pay from the Group Policyholder before taxes on the determination date. The determination date is the last day worked just prior to the loss.
>
> It also includes:
> 1. commissions averaged over the 12 months just prior to the determination date or over the actual period of employment with the Group Policyholder just prior to that date, if shorter.
>
> It does not include bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid, whichever is less.

(*Id.* at 115 (emphasis in original).)

Additionally, the Policy's "Premium Rate Schedule" details that the "Monthly Group Life Rate" at the time the policy was created equaled "$.19 per $1,000 of insurance." (*Id.* at 120) Defendant was also permitted to change the premium payment rate "on any premium due date on or after this Policy's first anniversary, or any later Rate Guarantee Date agreed upon by the Company." (*Id.*) Pursuant to this power,

Defendant changed the Premium Rate Schedule on two occasions. (Doc. # 38 at 2.) The premium rate in effect at the time of Mr. Cox's death was $.21 per $1,000 of insurance. (*Id.*) The Administrative Record reflects that for at least three months before Mr. Cox's death, Axis paid to Defendant, on Mr. Cox's behalf, premium payments of $31.50 each month for life insurance. (Doc. # 33 at 107-09.)

After Mr. Cox's death, Plaintiff sent Defendant a claim form (*id.* at 101), and she requested $200,000, the amount she believed Mr. Cox's beneficiaries[1] were entitled to under the Policy. Defendant informed Plaintiff that more information was necessary to calculate the amount to which the beneficiaries were entitled (*id.* at 167) and, attempting to resolve the issue, Plaintiff and Defendant exchanged several communications (*see, e.g.*, *id.* at 3-5, 16, 42-43).

Eventually, Defendant concluded that Mr. Cox's beneficiaries were entitled to receive a benefit amount of $160,000. (*Id.* at 42.) Pursuant to the Policy's appeal process, Plaintiff appealed Defendant's decision and was denied on August 30, 2010. (*Id.* at 3-5.) Thereafter, Plaintiff initiated this action. (Doc. # 1.)

B.   **PROCEDURAL HISTORY**

On September 29, 2010, Plaintiff filed a Complaint in Denver District Court against Defendant, alleging three claims for relief, for what essentially amounted to: breach of contract; an award of double the maximum insurance benefits and reasonable attorneys' fees and costs under Colo. Rev. Stat. § 10-3-1116; and breach

---

[1] Plaintiff was not the Policy's sole beneficiary; however, the other named beneficiary, Mr. Cox's daughter, Amanda Cox, is not party to this action.

of good faith and fair dealing, for which Plaintiff sought an award of punitive damages, reasonable attorneys' fees, and costs.  (Doc. # 1-1.)  Defendant removed the action to this Court on October 19, 2010.  (Doc. # 1.)

On April 13, 2011, the Court granted Defendant's Memorandum in Support of ERISA Preemption (Doc. # 16).  (Doc. # 21.)  It found that Plaintiff's claims were pre-empted by ERISA and directed Plaintiff to amend her complaint, restating her claims under federal law.  (*Id.* at 5.)  Plaintiff filed an amended complaint on April 27, 2011.  (Doc. # 22.)  The Administrative Record was filed on September 23, 2011.  (Doc. # 33.)  On October 13, 2011, Plaintiff filed her Opening Brief.  (Doc. # 34.)  Defendant filed the instant Motion in combination with its Response Brief on November 11, 2011.[2]  (Doc. # 35.)  Plaintiff replied on November 29, 2011.  (Doc. # 36.)

## II. STANDARD OF REVIEW

The Employment Retirement Income Security Act of 1974 ("ERISA") allows plaintiffs to challenge benefit eligibility determinations in federal court to "recover benefits due . . . under the terms of . . . [the insurance] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  But the ERISA statute does not specify the appropriate judicial standard of review.  In response, the Supreme Court has adopted the "arbitrary and capricious" standard when an ERISA plan grants a plan administrator

---

[2] Doing so was improper under D.C.COLO.LCivR 7.1(C) ("A motion shall not be included in a response or reply . . . [but] shall be made in a separate paper.").  Nonetheless, given the pendency of this case, the Court will address the Motion here.

discretionary authority to interpret the terms of, and determine the grant of benefits under, the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).[3]

In reviewing an ERISA plan administrator's decision under the arbitrary and capricious standard, federal courts are limited to the administrative record. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992). When applying this standard of review, courts consider the evidence and arguments before the plan administrator at the time he made the decision to deny benefits. *Id.*; *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008); *Adamson v. Unum Life Ins. Co.*, 455 F.3d 1209, 1214 (10th Cir. 2006).

In applying the arbitrary and capricious standard, the Court is required to uphold a benefits denial decision of an ERISA plan administrator so long as it is predicated on a reasoned basis. *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). The Court's review inquires into whether the administrator's decision resides "somewhere on a continuum of reasonableness – even if on the low end." *Id.* (quotation marks and citation omitted). Accordingly, the Court "will not substitute [its] own judgment for that of

---

[3] The Court notes that where an insurer is also the plan administrator, a conflict of interest exists. *Adamson*, 455 F.3d at 1212-13. In such a situation, that "conflict should be weighed as a factor in determining whether there is an abuse of discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (internal quotation marks omitted). To incorporate this factor, the Tenth Circuit has crafted a "sliding scale approach" where the "reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-26 (10th Cir. 1996). Here, while Defendant was operating under a conflict of interest as both insurer and administrator, because Defendant explicitly maintained discretionary authority under the plan, the Court will still employ the arbitrary and capricious standard but will weigh Defendant's conflict of interest as a factor in determining the lawfulness of the benefits denial. *See Glenn*, 554 U.S. at 113-16.

the plan administrator unless the administrator's actions were without any reasonable basis." *Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006).

To determine whether the decision was reasonable in light of the plan's language, the Court must first "scrutinize the 'plan documents as a whole and, if unambiguous, construe them as a matter of law.'" *Weber*, 541 F.3d at 1011 (quoting *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007)). In making this determination, the Court is to "consider the common and ordinary meaning [of the plan language] as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Id.* (emphasis deleted and quotation marks and citations omitted). Here, it is undisputed that the Policy granted Defendant, the plan administrator, discretionary authority to determine the grant of benefits. (Doc. # 33 at 203.) Therefore, the Court will apply the arbitrary and capricious standard to decide whether Defendant's benefits decision was reasonable.

### III.  ANALYSIS

In its Motion, Defendant argues that the decision to deny the entire amount of insurance benefits Plaintiff requested was reasonable because, "under the group policy [the benefits] were capped based on the amount of monthly premiums paid by Axis on behalf of Mr. Cox." (Doc. # 35 at 1.) Specifically, Defendant asserts that based on the monthly life insurance premium payments, in the amount of $31.50 per month, Mr. Cox's beneficiaries were entitled to a maximum of $150,000, which was "increased

to $160,000.00 by [Defendant]." (Doc. # 35 at 8.) For the following reasons, the Court agrees.

The unambiguous language of the Policy indicates that Basic Annual Earnings "will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid, whichever is less."[4] (Doc. # 33 at 115.) Additionally, the Policy's "Premium Rate Schedule" states that for Group Life insurance, the insured receives $1,000 of insurance for every $.19 of premium payments. (*Id.* at 120.) The Policy's guidelines expressly granted Defendant authority to change the premium payment rate and, at the time of Mr. Cox's death, the premium rate in effect was $.21 per $1,000 of insurance. (*Id.*; Doc. # 38 at 2.) Thus, based on the "Premium Rate Schedule," the premium payment rate in effect at the time of Mr. Cox's death, and basic arithmetic the monthly premium payments of $31.50 entitled Mr. Cox to $150,000 of life insurance.[5] Therefore, Defendant's assertion that monthly life insurance premium payments, in the amount of $31.50 per month, entitled Mr. Cox's beneficiaries to a "maximum of $150,000 in life insurance benefits" (Doc. # 35 at 3), clearly satisfies the requirement that Defendant's explanation reside somewhere on the "continuum of

---

[4] Regarding the amount shown in its financial records, Defendant "concede[s] that its conclusion regarding the timing of the [$65,750.00] commission payment was flawed." (Doc. # 35 at 11.) Thus, adding the commission to the $106,538.42 that Defendant asserts Mr. Cox made as base salary, the amount shown in Defendant's financial records for Mr. Cox's Basic Annual Earnings should be at least $172,288.42. Because this figure is greater than the amount for which premiums had been paid, the Court will focus only on the latter amount.

[5] $31.50 divided by $.21 equals $150, which, multiplied by 1,000, equals $150,000.

7

reasonableness."[6]  In fact, Defendant clearly explained this reasoning to Plaintiff when it denied Plaintiff's request for insurance benefits in excess of $160,000.  (Doc. # 33 at 4.) The plan documents, as cited by the parties, and the common and ordinary meaning of the Policy language, unambiguously dictate this result and are "sufficiently supported by facts within [the administrator's] knowledge."  *Kimber*, 196 F.3d at 1098.  Accordingly, Defendant's benefits denial decision was not arbitrary and capricious.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Judgment on the Administrative Record (Doc. # 35) is GRANTED.  Accordingly, it is

FURTHER ORDERED that Plaintiff's Amended Complaint (Doc. # 22) is DISMISSED.  It is

FURTHER ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.  However, each party shall bear its own attorneys' fees.

DATED:  August __08__, 2012

BY THE COURT:

_/s/ Christine M. Arguello_

CHRISTINE M. ARGUELLO
United States District Judge

---

[6] The Court notes that Defendant's conflict of interest, while considered, does not alter the outcome in this case because the benefits determination was unambiguously mandated by the Policy, regardless of the plan administrator.